**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUSTIN CLARK, | : | Civil No. 1:22-CV-01469 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| BERNADETTE MASON, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

**ORDER**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by Justin Clark ("Petitioner"). (Doc. 1.) For the reasons set forth

below, the court will deny the petition for writ of habeas corpus, deny a

certification of appealability, and close the case.

**PROCEDURAL HISTORY**

Petitioner is a self-represented litigant who filed a petition for writ of habeas

corpus seeking relief from his state court judgment with this court in September of

2022. (Doc. 1.) Petitioner was convicted of murder, attempted murder, and

carrying a firearm without a license. *Commonwealth v. Clark*, CP-22-CR-

0002723-2013 (C.P. Dauphin County). The procedural history in the state court

was summarized by the Superior Court of Pennsylvania as follows:

> On June 23, 2014, the trial court sentenced [Petitioner] to concurrent
> sentences of life in prison without parole ("LWOP") on the homicide
> conviction, 20 to 40 years in prison for attempted murder, and three to
> six years in prison for the firearms violation. [The Superior Court]

1

affirmed [Petitioner]'s judgment of sentence, *Commonwealth v. Clark*, No. 2005 MDA 2014 (Pa. Super. filed July 21, 2015), and [the Pennsylvania] Supreme Court denied [Petitioner]'s petition for allowance of appeal.[1]  *Commonwealth v. Clark*, 132 A.3d 456 (Pa. 2016).

On March 1, 2017, [Petitioner] filed a timely *pro se* [Post-Conviction Relief Act ("PCRA")] petition.  Appointed counsel filed a supplemental petition, followed by a motion to preserve a challenge to the constitutionality of the sentence, in light of the United States Supreme Court's January 2016 decision in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), holding that the prohibition against mandatory LWOP sentences for juvenile offenders, announced in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), was retroactive on state collateral review.

The PCRA court issued an order preserving the sentencing issue. Following a hearing on July 17, 2018, the court resentenced [Petitioner] to a term of 45 years to life in prison for the murder conviction, concurrent with sentences of 20 to 40 years for attempted murder and three to six years for the firearms violation.

On July 26, 2018, [Petitioner]'s counsel filed a post-sentence motion and, subsequently, a notice of appeal from his judgment of sentence. The appeal was later dismissed for failure to file a brief. *Commonwealth v. Clark*, No. 1668 MDA 2018 (Pa. Super. filed March 28, 2019).

In addition to filing a post-sentence motion on July 26, 2018, [Petitioner] filed an amended PCRA petition.  By order entered August 13, 2018, the PCRA court dismissed [Petitioner]'s PCRA petition and [Petitioner] appealed.  On appeal to [the Superior Court], we vacated the PCRA court's August 13, 2018 order, finding that [Petitioner] was denied his rule-based right to counsel on his timely first PCRA petition. *See Commonwealth v. Clark*, No. 1509 MDA 2018 (Pa. Super. filed September 9, 2019).  We remanded the case for appointment of new counsel, with instruction for counsel to file an amended petition or proceed in accordance with *Turner/Finley* and seek to withdraw as counsel.  *Id.*

---

[1] The Supreme Court of Pennsylvania denied the appeal on March 1, 2016.

> Following remand, Wendy L. F. Grella, Esquire, was appointed as counsel. Attorney Grella subsequently filed a 158-paragraph motion to withdraw in which she provided the procedural background, addressed each of the six claims [Petitioner] asserted in his PCRA petition, and explained why each claim lacked merit. In addition to averring that she had carefully reviewed the record before concluding [Petitioner] was not entitled to relief, counsel indicated that she provided a letter to [Petitioner] outlining her reasons for seeking to withdraw. Motion to Withdraw, 2/24/20, at ¶ 63.

> By order entered February 27, 2020, the PCRA court granted counsel's motion to withdraw and provided notice in accordance with Pa.R.Crim.P. 907 of its intention to dismiss [Petitioner]'s petition. On March 16, 2020, [Petitioner] filed a detailed response. On May 1, 2020, following review of the "complete record . . . and [Petitioner's] response" to the Rule 907 Notice, the PCRA court denied [Petitioner]'s request for relief, noting there was "no genuine issue concerning any material fact, and [Petitioner] is not entitled to post conviction relief." Order, 5/1/20, at 1.

*Commonwealth v. Clark*, 262 A.3d 544, 2021 WL 3674323, at \*1–2 (Pa. Super. Aug. 19, 2021).

On August 19, 2021, the Superior Court affirmed the PCRA court's denial of relief stating: "[b]ecause we find no abuse of discretion in the PCRA court's denial of relief, or in its imposition of a sentence of 45 years to life for [Petitioner]'s first-degree murder conviction, we shall affirm the May 1, 2020 order denying Appellant's PCRA petition." *Id.* On June 7, 2022, Petitioner's petition for allowance of appeal was denied by the Supreme Court of Pennsylvania. *Commonwealth v. Clark*, 279 A.3d 1177 (Jun. 7, 2022).

On September 20, 2022, this court received and docketed the instant § 2254 petition initiating this action.  (Doc. 1.)  The petition states that the document was placed in the prison mailing system on September 7, 2022.  (*Id*., p. 18.)[2]

On February 17, 2023, Respondents filed a response asserting that the petition is untimely and barred by 28 U.S.C. § 2244(d).  (Doc. 12.)  But Respondents' calculation of the statute of limitations under § 2244(d) failed to account for the July 17, 2018 resentencing.  Therefore, the court ordered the sentencing transcript and judgement and sentencing documents be filed with the court to determine if the resentencing was limited to specific counts or if it was a *de novo* resentencing.  (Doc. 18.)  On January 2, 2024, the court entered an order finding that the July 17, 2018 resentencing was a *de novo* resentencing and applied to all counts.  (Doc. 23.)  Therefore, court determined that the petition was timely and ordered briefing on its merits.  (*Id*.)

On January 31, 2024, Respondent filed a merits response to the petition. (Doc. 24.)  On October 11, 2024, Petitioner filed a motion to supplement the petition seeking to supplement his petition in light of recent transcripts from three 2022 hearings concerning the former prosecutor Assistant District Attorney John Baer's conduct in dealing with witnesses and co-conspirators.  (Docs. 27, 28.) However, Petitioner did not include a proposed supplemental petition with his

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

4

filings.  On February 11, 2025, Petitioner filed a motion to stay the proceedings to allow him the opportunity to exhaust the claims he wished to raise through the motion to supplement.  (Doc. 37.)

On September 24, 2025, the court entered an order denying the motion to supplement the petition and the motion for a stay.  (Doc. 41.)  The court granted Petitioner a sixty-day period in which to renew his motion to supplement the petition with the required proposed supplemental petition.  (*Id*.)  Nothing was received within that sixty-day period.  Therefore, the court will proceed to address the merits of the petition.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Petitioner was convicted and sentenced in Dauphin County, Pennsylvania, which is located in this district.  Therefore, venue in this district is proper.

## DISCUSSION

As stated above, Petitioner has petitioned the court pursuant to the provisions of 28 U.S.C. § 2254, challenging his state court conviction and sentence

that was imposed by the Court of Common Pleas of Dauphin County, Pennsylvania.  (Doc. 1.)

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

Here, Petitioner provides the following four challenges to his conviction and sentence: (1) the sentencing court violated his Sixth, Eighth, and Fourteenth Amendment rights by imposing a greater sentence than legislatively authorized under 18 Pa.C.S. § 1102.1(a); (2) his Sixth and Fourteenth Amendment due process rights were violated by the Commonwealth's intentional concealment of material evidence and this concealment predicated the subornation of perjury by the Commonwealth's "sole" witness, Johnathan Ramsey; (3) his Sixth and Fourteenth Amendment rights were violated by trial counsel's failure to request jury instructions for a lesser degree of homicide in light of evidence received at trial; and (4) his Fourth, Sixth, and Fourteenth Amendment rights were violated by the police's illegal search and monitoring of his cell phone without a warrant or consent.  (Doc. 1.)  The court will address each challenge in turn.

## A. Sentence Duration

Petitioner alleges that the sentencing court violated his Sixth, Eighth,  and Fourteenth Amendment rights by imposing a greater sentence than legislatively authorized under 18 Pa.C.S. § 1102.1(a).  (Doc. 1, p. 5; Doc. 4, pp. 14–22.)

7

Respondents argue that this challenge is unexhausted and procedurally defaulted. (Doc. 24, p. 16.)

A federal court may not grant a writ of habeas corpus on a claim brought by an individual in custody pursuant to a state court judgment unless: (1) "the applicant has exhausted the remedies available in the courts of the State;" (2) "there is an absence of available State corrective process;" or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Thus, when a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts will typically refuse to entertain a petition for writ of habeas corpus. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). It is the petitioner who bears the burden of establishing the exhaustion requirement has been satisfied. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

8

To satisfy the exhaustion requirement, a petitioner must invoke "one complete round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. *Id*. at 845 (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion is considered satisfied). To "fairly present" a claim, the petitioner must present his or her "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

The failure to properly present claims to the state court generally results in a procedural default. *Lines*, 208 F.3d at 150–60. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims "unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *McCandless*, 172 F.3d at 260 (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

In his PCRA petition, Petitioner argued that the trial court "abused its discretion upon resentencing by imposing a sentence of 45 years to life for his first-degree murder conviction." *Clark*, 2021 WL 3674323, at *4–5; Doc. 24-7. In doing so, Petitioner has not alleged that the trial court's sentence was contrary to, or involved an unreasonable application of, clearly established federal law. Instead, the arguments presented before the state courts were concerning the abuse of discretion by the state court.

The exhaustion doctrine "requires that habeas petitioners 'fairly present' federal claims to state courts before bringing them into federal court." *Dreher v. Pinchak,* 61 Fed. Appx. 800, 803 (3d Cir. 2003) (citing *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)), *cert. denied,* 540 U.S. 888 (2003); *see Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir.2001) (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)), *cert. denied,* 534 U.S. 973 (2001). "It is not sufficient that all the facts necessary to support the federal claim were before the state courts." *Keller,* 251 F.3d at 413 (quoting *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)); *see Dreher,* 61 Fed. Appx. at 803 (citing *Anderson* ). "[M]ere similarity of claims is insufficient to exhaust." *Keller,* 251 F.3d at 413 (quoting *Duncan,* 513 U.S. at 366); *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ).

"If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365–66; *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ).  Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan,* 513 U.S. at 365–66; *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ).

Here, Petitioner did not raise any claim that the duration of the sentence violated federal law before the state court.  Therefore, this challenge is procedurally defaulted.  Petitioner has not asserted any cause and prejudice or a fundamental miscarriage of justice to excuse his default.  As such, the court will deny the petition for writ of habeas corpus with respect to this challenge.

## B. *Brady* Violation

Petitioner alleges that his Sixth and Fourteenth Amendment due process rights were violated by the Commonwealth's international concealment of material evidence and this concealment predicated the subornation of perjury by the Commonwealth's "sole" witness, Johnathan Ramsey.  (Doc. 1, pp. 7–8; Doc. 4, pp. 23–32.)  Specifically, Petitioner argues that at the trial, Mr. Ramsey testified

11

against him and stated that he was not offered or agreed to receive anything for his cooperation.  (Doc. 1, pp. 7–8; Doc. 4, pp. 26–27.)  Subsequently, Mr. Ramsey received only a five-to-ten-year sentence of incarceration following Petitioner's trial.  (Doc. 1, pp. 7–8; Doc. 4, p. 28.)  Petitioner alleges that Mr. Ramsey perjured himself by stating that there was no favorable treatment for his cooperation with authorities.  (Doc. 1, pp. 7–8.)  Essentially, Petitioner is raising a violation under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Superior Court of Pennsylvania addressed this issue:

In his fourth issue, Appellant contends the PCRA court erred for failing to find a *Brady/Napue* violation for the Commonwealth's failure to disclose "impeachment evidence."  At issue is the testimony of witness Jonathan Ramsey, the driver of the vehicle from which Appellant fired a gun into a crowd, killing innocent bystander, Rob Burris.  Appellant claims after-discovered evidence indicating that Ramsey, who also was charged with murder and attempted murder, received consideration for his perjured testimony at Appellant's trial.  However, as PCRA counsel explains in the Motion to Withdraw, Ramsey was not offered any type of consideration for his testimony.  Motion to Withdraw, 2/24/20, at ¶ 95 (citations to notes of trial testimony omitted).

As counsel recognizes, to obtain relief based on after-discovered evidence, an appellant must demonstrate that the evidence satisfies a four-part test, one prong of which is that the evidence will not be used solely to impeach the witness.  *Id.* at 98 (citing *Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012), in turn citing *Commonwealth v. Pagan*, [5]97 Pa. [69, 105] (Pa. 2008)).  Because the "evidence" in question would be used solely to impeach the credibility of Ramsey, Appellant does not satisfy the criteria of *Foreman* and *Pagan*, and Appellant is not entitled to relief.   The PCRA court determined Appellant's fourth issue was meritless for the reasons set forth in the Motion to Withdraw.  We find no abuse of discretion in that

conclusion.   Appellant is not entitled to relief based on "after-discovered evidence."

*Clark*, 2021 WL 3674323, at \*6.  The four prongs identified in *Forman* include the

following:

> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Foreman*, 55 A.3d at 537.  Petitioner alleges that this four-prong test was

erroneous.  (Doc. 4, p. 30.)

Under federal caselaw, the government violates a defendant's due process

rights when it suppresses evidence favorable to the defendant that "is material to

guilt or to punishment."  *Brady* 373 U.S. at 87.  So, too, "[w]hen the 'reliability of

a given witness may well be determinative of guilt or innocence,' nondisclosure of

evidence affecting credibility falls within" *Brady's* purview.  *Giglio v. United*

*States*, 405 U.S. 150, 154 (1972).  Therefore, at first blush, it appears that

petitioner has established that the law as applied by the Commonwealth is

inconsistent with the federal standard.

However, the Third Circuit has held that for a defendant to prove a violation

of *Brady* and/or *Giglio*, a defendant must show: "(1) evidence was suppressed; (2)

the evidence was favorable to the defense; and (3) the evidence was material to

13

guilt or punishment." *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).  It is this materiality element at issue in this case.

In his petition and brief, Petitioner alleges that Jonathan Ramsey ("Ramsey") perjured himself by giving testimony against Petitioner, stating that he was not offered any consideration for his testimony, and then receiving his own sentence that was so minimal that the only explanation is that he was given consideration for his testimony against Petitioner.  (Docs. 1, 4.)  As evidence of this consideration, Petitioner attached Ramsey's sentencing order and docket sheet showing that he pled guilty to a single count of third degree murder and was sentenced to costs, a fine of $2,500.00, and incarceration of five to ten years with credit for time served and that the criminal attempt murder charge was withdrawn by the prosecution. (Docs. 4-1, 4-2.)  He argues that such a light sentence in contrast to his sentence can only be the result of consideration for the testimony entered against Petitioner at Petitioner's trial.  (Doc. 4.)

Respondent sets forth all the additional evidence that pointed to Petitioner's guilt to demonstrate that the impeachment of Ramsey's testimony is not material in this action.  (Doc. 24, pp. 22–24.)  This includes the testimony of Aja Lewis, an eyewitness who testified that Petitioner was a passenger in a car in the neighborhood of the shooting minutes before the murder, the testimony of Devacio McGown, whose recorded statement on the night of the shooting was played at the

jury trial stating that he was with Ramsey and the Petitioner after the shooting and Petitioner admitted to being the shooter, and cell phone records demonstrating that Petitioner's burner cell was present at the scene of the shooting at the time of the shooting.  (*Id*.)  The court reviewed the transcript of the jury trial and confirmed that all the evidence presented in Respondent's briefing was in the record.  (Doc. 34-2, pp. 36, 53, 84–89, 107–112.)

In *Giglio*, the Supreme Court clearly found a due process violation where the government did not reveal impeachment evidence about "the only witness linking petitioner with the crime[,]" on whose testimony "the Government's case depended almost entirely."  405 U.S. at 151, 154–55.  That is simply not the case in the present action.  There was other corroborating evidence in addition to Ramsey's testimony that makes *Giglio* inapplicable to this case.

Furthermore, a review of the jury trial transcript demonstrates that Ramsey admitted that he spoke with his lawyer who told him that his cooperation would be taken into consideration in his own criminal case.  (Doc. 34-2, p. 53.)  He stated that his testimony was motivated by the hope of a benefit for his cooperation and making things right by the family of the victim.  (*Id*.)  Therefore, the jury was told that Ramsey was hoping for a reduced sentence in exchange for his testimony.

Based on a review of the jury trial transcript, the court determines that Petitioner has not established that the impeachment evidence was material to guilt

or punishment and this is not the same scenario that the Supreme Court considered in *Giglio*, where the testimony was the only link between the Petitioner and the crime. Therefore, while the Commonwealth's standard in *Foreman* appears to be inconsistent with the federal standard in *Giglio*, the application of the *Foreman* standard in this case did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court will deny the petition with respect to this challenge.

## C. Charge for Lesser Degree of Homicide

Petitioner alleges that his Sixth and Fourteen Amendment rights were violated by trial counsel's failure to request jury instructions for a lesser degree of homicide in light of evidence received at trial. (Doc. 1, pp. 10–11.)

The Superior Court found the challenge lacked merit:

> In her motion to withdraw, counsel acknowledges that while the issue of requesting a jury instruction on lesser degrees of homicide has been asserted as the basis for an ineffectiveness claim, "no relief can be granted in the absence of some evidence existing in the record to support the lesser degree of homicide." Motion to Withdraw, 2/24/20, at ¶ 82 (citing *Commonwealth v. Carter*, 466 A.2d 1328 (Pa. 1983) and *Commonwealth v. Ulatoski*, 407 A.2d 32 (Pa. Super. 1979)). However, Appellant contends that the failure to request a lesser-degree charge not only deprived him of due process, but also precluded the jury "from exercising its mercy dispensing power attached to optional verdicts ... result[ing] in his conviction of first-degree murder, punishable by death or life without parole." Appellant's Brief at 25. "[I]f a charge was given on third-degree murder, ... and the jury had found appellant guilty of that degree of homicide, appellant would not and could not receive a sentence of LWOP." *Id.*

Here, Appellant testified he had nothing to do with the homicide. Because "the defense's theory of the case was that [Appellant] did not commit the offense, ... it is not ineffective for trial counsel to argue for the jury to acquit [Appellant] on 1st degree murder. Trial counsel had a reasonable basis for not requesting additional jury instructions." Motion to Withdraw, 2/24/20, at ¶ 87-88. We agree with the PCRA court's conclusion that the issue is meritless and Appellant is not entitled to relief.

*Clark*, 2021 WL 3674323, at *4.

Petitioner's argument that the trial court erred when it declined to charge the jury on the lesser-included offense lacks merit. The trial court's decision not to give the instruction was neither contrary to, nor an unreasonable application of, Supreme Court precedent. "Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'" *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). The only pertinent inquiry is whether the state court's decision to omit a particular jury instruction was contrary to, or an unreasonable application of, United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). In order to meet this burden, a petitioner must either "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or show that the "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

The United States Supreme Court has held that an instruction on a lesser-included offense is required in capital cases where the evidence warrants such an

17

instruction.  *See Beck v. Alabama*, 447 U.S. 625, 627 (1980).  Notwithstanding, the Supreme Court specifically reserved the question of whether an instruction on a lesser-included offense is similarly required in non-capital cases.  *See id.* at 638 n.14; *see also Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("[o]utside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error")

Here, the PCRA court concluded that since Petitioner's defense was that he was not involved in the murder, there was no evidence presented to support a lesser charge.  This was affirmed by the Superior Court.  *Clark*, 2021 WL 3674323.  In this non-capital case, the state court's proceedings did not involve an unreasonable application of federal law.  The court will deny the petition on this challenge.

### D. Cell Phone Monitoring

Petitioner alleges that his Fourth, Sixth, and Fourteen Amendments rights were violated by the police's illegal search and monitoring of his cell phone without a warrant or consent.  (Doc. 1, pp. 12–13.)

The Superior Court found that this challenge was without merit:

In his fifth and final issue, Appellant argues PCRA court error for failing to vacate Appellant's conviction in light of a new constitutional right established by *Commonwealth v. Fulton*, 179 A.3d 475 (Pa. 2018), and claims his cell phones were illegally searched without a warrant. However, testimony at trial established that while the arresting officer observed Appellant's two phones ringing and vibrating while Appellant was in custody, the officer did not access either device. Motion to Withdraw, 2/24/20, at ¶¶ 147-154. Unlike *Fulton*, the officer did not

18

indicate that he opened, accessed, or used either device. Further, the Commonwealth secured a search warrant for the information that was obtained from the phones and presented at trial, and trial counsel stipulated to the admission of the records obtained by means of the warrant. *Id.* at ¶¶ 156-157. Appellant is not entitled to relief on his fifth issue.

*Clark*, 2021 WL 3674323, at *6.

Initially, the court notes that while Petitioner's Fourth Amendment argument focuses on a state case, his PCRA briefing relies heavily on the federal case of *Riley v. California*, 573 U.S. 373 (2014), which concerns the Fourth Amendment of the United States Constitution, thus alerting the state court that Petitioner was bringing a federal claim as to the search of his cell phones. (Doc. 24-6, pp. 172–73, 242.) Petitioner's argument is that Officer Corkle testified that he accessed the phones prior to getting a search warrant. (Doc. 4, pp. 41–42.) However, a review of the full transcript reveals that Officer Corkle testified that he asked Petitioner about the phones and asked if he could check them, "I did that to see if there was any record in there of who he was via text message, e-mail, anything like that, that would show a name of the owner." (Doc. 24-2, p. 104.) Officer Corkle offered this statement as an explanation as to why he asked to access the cell phones, not as an explanation for why he accessed the cell phones. Officer Corkle then goes on to state that he obtained Petitioner's identity after arriving at the police station, and not from the contents of the phones. (*Id.*) Once Petitioner was identified, Officer Corkle contacted the Harrisburg City Police because Petitioner was listed

as a person of interest in a homicide in Harrisburg. (*Id.*) Two detectives arrived who took custody of Petitioner and the two phones. (*Id.*, pp. 104–05.) On cross-examination, Officer Corkle stated that Petitioner refused him access to the phones. (*Id.*, p. 106.) At no point did Officer Corkle state that he accessed the phones. Therefore, the court finds that Petitioner has not established that the cell phones were searched without a warrant. As such, the PCRA court's decision is not contrary to established federal law and did not result from a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The court will deny the petition for writ of habeas corpus with respect to this challenge as well.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching

20

the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Additionally, jurists of reason would not find the procedural disposition of this case debatable.  Accordingly, no COA will be issued.

### CONCLUSION

For the reasons set forth above, the court will deny the petition for writ of habeas corpus and close the case.  A certificate of appealability will be denied.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Date:  March 16, 2026

21